UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**STEPHEN ALFIERI**,
    Plaintiff,

v.                                                                                          8:24-cv-2269-NPM

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

## ORDER

Plaintiff Stephen Alfieri seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the administrative proceedings (Doc. 11), Alfieri filed an opening brief (Doc. 12), and the Commissioner responded (Doc. 13). For the reasons below, the Commissioner's decision is affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than twelve months.[1] Depending on its nature and severity, an impairment limits

---

[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[2] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[3]

## B. Factual and procedural history

On March 12, 2022, Alfieri applied for disability insurance benefits. (Tr. 179). He asserted an onset date of May 26, 2021, alleging disability due to moderate to severe arthritis in the neck, narrowing and degenerative disc with limited motion, hearing loss, dehiscence in the temporal bone, and vertigo due to the dehiscence.[4] (Tr. 179, 217). As of the alleged onset date, Alfieri was 45 years old, had a general education degree, and had past relevant work as a tow-truck driver. (Tr. 45–46, 179, 218).

---

[2] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)–(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)–(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[3] *See* 20 C.F.R. § 404.1511.

[4] Dehiscence in the temporal bone refers to an abnormal thinning or absence of bone in a specific area of the temporal bone, which is located on the side of the skull near the ear. This condition can expose underlying structures, such as the inner ear or brain, and may lead to symptoms like hearing loss, dizziness, or sensitivity to sound or pressure.

On behalf of the administration, a state agency[5] reviewed and denied Alfieri's application initially on June 1, 2022, and upon reconsideration on October 20, 2022. (Tr. 88, 93). At Alfieri's request, Administrative Law Judge (ALJ) Philip Healy held a hearing during which Alfieri was represented by an attorney. (Tr. 38–69). The ALJ issued a November 1, 2023 decision finding Alfieri not disabled (Tr. 16), and the administration's Appeals Council denied review. (Tr. 2). Alfieri then brought the matter to this court, and the case is ripe for judicial review.

### C.  The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the

Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Alfieri had not engaged in substantial gainful activity since May 26, 2021, the alleged onset date. (Tr. 21). At step two, the ALJ characterized Alfieri's severe impairments as: multilevel spondylitic changes, worse at C5–6 with diffuse disc osteophyte complex eccentric to the right which effaces the ventral subarachnoid space and severe narrowing of the right foramen (spinal issues); cervical annular disc herniation with stenosis and encroachment (neck issues); posttraumatic healed deformity of the distal fibula with punctate metallic densities in keeping with tiny ballistic debris (a healed leg deformity caused by gunshot); bilateral tinnitus; mixed hearing loss; cholesteatoma of the left mastoid (hearing issues); vertigo; and obesity. (Tr. 22, 308). At step three, the ALJ determined Alfieri did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 24).

> As a predicate to step four, the ALJ arrived at the following RFC:
>
>> [N]ever climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; never balance (as defined in the DOT); occasionally stoop, kneel, and crouch; never crawl; no bilateral overhead reaching; must avoid concentrated exposure to extreme cold and vibration; no work with hazards like dangerous moving machinery and unprotected heights; no work with loud noise, defined as heavy traffic; able to understand, remember, and carry out simple tasks and

> decisions; limited to occupations where all oral communication is short, simple, and clear; and no work with production quotas or an assembly line pace. (Tr. 25–26).

Consequently, the ALJ found Alfieri was unable to perform his past relevant work. (Tr. 30). At step five, the ALJ found Alfieri could perform other work that exists in significant numbers in the national economy. (Tr. 31). In support, a vocational expert testified[6] (Tr. 60–64) that an individual of Alfieri's age, education, work experience, and RFC can perform the following representative occupations:

- *Sorter*, DOT #222.687-014, light, SVP 2, 40,000 jobs;
- *Ticket Taker*, DOT #344.667-010, light, SVP 2, 44,000 jobs;
- *Ticketer*, DOT #229.587-018, light, SVP 2, 35,000 jobs.[7]

Thus, for purposes of the Act, the ALJ concluded Alfieri was not disabled from May 26, 2021, the alleged onset date, through November 1, 2023, the decision date. (Tr. 32).

---

[6] Alfieri's counsel did not object to the qualifications of the vocational expert (Tr. 60).

[7] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled. The expert's job numbers were for the national economy.

## II. Analysis

Alfieri's appeal asks whether the ALJ's evaluation of his subjective complaints is supported by substantial evidence and whether the RFC is so vague as to render the vocational expert's testimony unreliable, such that the ALJ's disability finding is not supported by substantial evidence.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words,

a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The ALJ properly considered Alfieri's subjective complaints.

Alfieri argues that substantial evidence does not support the ALJ's conclusion that the intensity, persistence, and functionally limiting effects of his dizziness symptoms were not as severe as alleged. When considering a claimant's subjective complaints, an ALJ must follow a two-step process. SSR 16–3p, 2017 WL 5180304, *3–4 (Oct. 25, 2017). First, the claimant must provide evidence of an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's symptoms. *Id.* Second, the ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.*

If the objective medical evidence does not substantiate the claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then the ALJ must consider other evidence in the record to determine if,

and to what extent, the claimant's symptoms limit his ability to do work-related activities. This other evidence includes a claimant's daily activities; reports about the location, duration, frequency, and intensity of the individual's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms. *See* 20 C.F.R. §§ 404.1529(c), 404.1545(a)(3); *see also* SSR 16–3p, 2017 WL 5180304 at *7–8. The regulations provide that, normally, a claimant's statements about his pain or other symptoms, alone, will not establish disability; there must also be objective medical evidence. *See* 20 C.F.R. § 404.1529(a)–(b).

The ALJ properly adhered to the steps above. At step one, the ALJ found that the impairments could reasonably be expected to cause Alfieri's alleged symptoms. (Tr. 29). And at step two, the ALJ found that Alfieri's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical and other evidence. (Tr. 29). To reach this conclusion, the ALJ cited multiple exams showing Alfieri not to be in acute distress. (Tr. 310, 321, 331, 346, 369, 833, 865, 881, 888, 896, 904, 911, 928). And he reasoned that the allegations of disabling pain, dizziness, and vertigo were inconsistent with evidence that showed generally normal gait, range of motion, and

other normal mobility findings. (Tr. 343, 346, 673, 765, 819, 821, 834, 843, 889, 897, 904, 913). The ALJ also addressed lightheadedness and found that Alfieri's symptoms either stopped at certain points (Tr. 726) or were only moderate and intermittent. (Tr. 312, 681). The ALJ also considered Alfieri's activities of daily living, such as performing self-care activities and household chores, preparing simple meals, and managing finances. (Tr. 30, 240–247). All told, more than a scintilla of evidence that a reasonable person would find adequate to support the ALJ's finding that Alfieri's dizziness symptoms were not as severe as alleged.

### C. Alfieri has failed to show any reversible error related to the purported vagueness of the RFC.

The ALJ's step–five finding that Alfieri could perform sufficiently available work rests on testimony from a vocational expert that was, in turn, based on the RFC. Among other things, the RFC limited Alfieri to "no work with loud noise, defined as heavy traffic," and "occupations where all oral communication is short, simple, and clear." Without citations to any on-point authority, Alfieri contends that the phrases "heavy traffic" and "short, simple, and clear" are so vague that "there is simply no way that a vocational expert … could render a reliable opinion …." (Doc. 12 at 10).

But the relevant inquiry on this issue is not whether substantial evidence supports the vocational expert's testimony, but whether the vocational expert's testimony supplied substantial evidence in support of the ALJ's decision. *See Pace*

*v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019). Indeed, a vocational expert's testimony can constitute substantial evidence without delving into the underlying data. *See Biestek*, 139 S. Ct. at 1154. And there is no suggestion in the hearing transcript that anyone was confused about the meaning of these phrases in the RFC. (Tr. 38–69).

In fact, while Alfieri's counsel questioned the expert about limitations precluding exposure to dangerous machinery, humidity, and lifting more than ten pounds, her opinions—to the extent they included the RFC's noise and oral-communication limitations—went entirely unchallenged. (Tr. 64–67). Therefore, there is nothing in the record that supports the argument that Alfieri is now making. *See Campbell v. Comm'r of Soc. Sec.*, No. 8:18-CV-2491-T-TGW, 2020 WL 859845, *3 (M.D. Fla. Feb. 20, 2020) (citing *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1286 (11th Cir. 2019) ("It is a foundational principal of administrative law that a reviewing court must review only the information that was before the agency at the time of its decision in assessing whether that decision was permissible.")).

Likewise, Alfieri's counsel confirmed the absence of any objection to the expert's qualifications. (Tr. 60). Thus, the vocational expert's ultimate opinion about available work in the economy, illustrated by the representative occupations, provided substantial evidence in support of the ALJ's step-five finding. *See Curcio*

*v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise."); *see also Pace*, 760 F. App'x at 782 (finding a reasonable person would accept the expert's testimony in light of the claimant not offering any objection to it).

### III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision, and there was no error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

**ORDERED** on September 30, 2025

_____
NICHOLAS P. MIZELL
United States Magistrate Judge